May it please the court, Tim Fox on behalf of the appellants, I'd like to reserve five minutes of my time for rebuttal. If you do so, just watch the clock. Thank you, Your Honor. The key question raised in this appeal is what must a class of individuals with disabilities prove, a class that seeks simply an injunction designed to prevent future violations of access regulations at Taco Bell restaurants, what must that class prove that has not already been proven here? Over the 10-year span of this intensely litigated case, the district court found that Taco Bell has committed almost 400 violations of access regulations spread among more than 70% of the restaurants that were originally covered here. The district court also found... Counsel, help me with this. Perhaps I misunderstood. I thought that the parties agreed they were going to examine a particular location and that there was a study done there. You and co-plaintiffs wanted this extrapolated to the whole group. There was an objection to that. The court changed its mind and then issued an order. Let's see, what's the date here? I can't really tell. It looks like the stated date is September 17, 2012. And that's what we're really talking about, isn't it, whether or not that was a final determination that would allow you to have jurisdiction, for us to have jurisdiction to hear what would otherwise be an interlocutory appeal that might have some problems. There are several issues that you just raised. First, with respect to the basis for an injunction, it consisted of two different orders. One was the 2007 order on partial summary judgment that established that there were almost 400 violations of access regulations spread among more than 160 restaurants. Second, there were the findings of fact and conclusions of law coming from the exemplar restaurant. And that trial did concern only the barriers with respect to one restaurant. But the key findings in support of the systemic injunction that resulted from that trial concerned Taco Bell's centralized policies. Those policies came in as part of Taco Bell's efforts and significant evidence submitted by Taco Bell in support of its case. And we then responded to those. So there's no art – sorry, Your Honor. Scalia. I was going to say, what's troubling me at the moment is, first of all, let's identify which is the final order of the district court that we should be looking at. Is it the order amending October 5, 2011 findings dated September 17th? Isn't that the order that's – that would base jurisdiction in our court? There are two. There is that order and a second order dated that same date. The first order is the first page of the excerpt of record. The second order begins on the second page of the excerpts of records. Together, those orders modified the – That's the order modifying case management plan? That's correct. And that's the order in which the district court said that it could take another 10 years before this case is resolved, a case that's already 10 years old. And so – But what about the language in the September 17th order amending October 5th findings? The court will determine the form of injunctive relief, if any, to be issued following the conclusion of the other trials to be held in this case. And that is – That doesn't sound like a final order to me. It is not a final order. And we're not basing jurisdiction under 28 U.S.C. 1291. We're basing jurisdiction under 28 U.S.C. 1292A1, which applies to orders concerning injunctive relief. And the reason why – I'm going to focus my discussion on interlocutory jurisdiction on the express refusal test under that section as well as the practical effect test under that section. Both tests are met here. The reason why the express refusal test is met here is that we expressly requested entry of an injunction. The district court addressed the merits of that injunction by, for example, making extensive determinations that Taco Bell had violated the law and concluding that violations are likely to recur. And yet the district court refused to enter our injunction, finding that it was overbroad and refused to consider injunctive relief for potentially 10 years. Those set of circumstances establish that the express refusal test is met. And I cite three cases with almost exactly the same kinds of circumstances for that proposition. Don't you have to get to the preliminary relief pendente lite to address whether or not you've met your burden of showing that, you know, basically that you didn't seek an interim relief to prevent the very thing you're talking about in order for us to feel that you've met the test? That, I believe you're talking about the cases cited by Taco Bell which say that that look at the fact that a party did not seek preliminary injunction. That's relevant to the practical effect test, which I'll get to in a moment. And it's a question of whether or not the fact that the party did not seek a preliminary injunction means that there really isn't irreparable harm. But you don't need to show irreparable harm for the express refusal test. This court in Sciatica said that the express refusal test is satisfied regardless of whether there's any harm in delaying review. And this case is very similar to this court's decision in Sciatica versus Selaska, to the Tenth Circuit's decision in Forest Guardian, and to the Second Circuit's decision in Monsanto. Taco Bell argues that there's two reasons why the express refusal test is not met here. One is that the order at issue did not use the word deny or refuse. And the second is that the orders at issue left open the possibility of entering injunction years from now. But that can be true. That is true of those three decisions I just cited. In each of those cases, the one party asked for the district court to take some sort of injunctive action. The district court addressed the merits of that request, refused to take that action at the time, but left open the possibility of doing so in the future. And notwithstanding the fact that it left that possibility open, the Ninth Circuit, the Tenth Circuit, and the Second Circuit all found that the express refusal test was met. Taco Bell cites four decisions in its express refusal section of its brief. None of those decisions are to the contrary. Sotomayor did you specifically request a preliminary injunction in this case? We did not. And quite frankly, it would not have made sense in this case. It's very different than the cases that Taco Bell relies on. When we brought this case in 2002, we believed that there were thousands of violations spread among the 220 restaurants, a belief that was borne out by the special master report. We thought it would be very unlikely to succeed and probably improper to ask the district court to use the device of a preliminary injunction before any merits determinations to order Taco Bell to fix all of these barriers that had yet to been tried. So we did not do it, but the type of irreparable harm that we say exists under the practical effect test, the harm that will result if this court waits 10 years to review this case, all arose after October 2011, which is the point where the district court said it was going to enter a permanent injunction. Can I just ask you one thing, counsel? Do you agree that in order, even under the express refusal test, that you have to show that the delay would cause serious, perhaps irreparable consequences? No. You do not? No. And what do you cite for that? Sciatica v. Sealaska. And that was a big portion of that decision dealt explicitly with that point. And this court held in Sciatica that harm need not be shown in order for the express refusal test to be met. Now, of course, under the practical effect test, harm must be shown. And under your view, the practical effects test, what relationship, if any, does that have to the express refusal? Are they separate ways of getting at the same thing? They are. The practical effect test really was announced by the Supreme Court in the Carson decision. Right. And the reason why Carson needed to create this test is because the request to the district court at issue there was not for an injunction. So it wasn't an express refusal test. Rather, it was a request for approval of a consent decree, and the consent decree included an injunction. So the Supreme Court had to go through the analysis of, you know, under what circumstances can a court exercise interlocutory jurisdiction when the request at issue is not expressly for an injunction, and as a result it developed the practical effect test, the most important prong of which is whether serious or irreparable harm will result from an appellate court delaying review, in this case for 10 years. And we've cited several types of harm here that would result if this court chooses to wait to review potentially 10 years. One, of course, is that Taco Bell is actively engaging in trying to sell its restaurants, and 10 years from now may have been successful in doing so and has said that it's going to argue that our injunction claims are moot. So if this court waits 10 years to review this case, there'd be nothing for this court to review. Further, the record before this court, a record that is not challenged by Taco Bell, is that violations are likely to recur in these restaurants. That's what the district court held, which means that class members over the next 10 years, before this court reviews it, will be encountering barriers and thus being denied the full and equal access to the restaurants in direct contradiction to the ADA. And let me just ask you this. Taking for a moment your position that the express refusal is a separate world unto itself, other than the fact that the district court would have to express the refuse to enter an injunction, what else is required in order to have an appealable denial of a – of an injunction? You need an express request and you need the court to address the legal basis for the request. And that distinguishes the four cases cited by Taco Bell in its express refusal section of its brief. Two of those cases, the Supreme Court's decision in Gardner and this Court's decision in Construction Laborer, there was no express request for an injunction. So the express refusal test doesn't – isn't – It's premature. Is that enough under the express refusal doctrine by your lights to permit you to appeal to our court? Absolutely not. And it would not be enough under the practical effect test. Okay. Under the – then what – what would you have to show under the express refusal test  You need to show, A, somebody requesting an injunction. Right. B, the district court addressing the merits of that injunction. I want to come back to that because that distinguishes several other cases they cite. And C, the court refusing to do so. And that – Okay. Okay. Well, you kind of doubled up on the first and the last. I think they're the same. The court refuses to do it. When you say addressing the merits, you know the Supreme Court's been real clear with Mohawk and others, not with this particular one, but they don't like us to take interlocutory appeals. The statute makes it clear we can with respect to injunctions. It's a little bit different. But on the other hand, it seems to me it's kind of a startling doctrine that you're proposing, that if the district court says, I'm not going to issue an injunction, and all you're saying is the court has to discuss the merits, but by what standard? Do they have to say, you know, gee, I have some doubts about this, or do they have to go through with a detailed analysis? What does the district court have to do, from your perspective, that is wrong in order to permit an appeal in that circumstance? It needs to – it's not enough to hypothesize or something along those lines. There needs to be a concrete determination. Here, for example, the determination made in the partial summary judgment motion that Talcobel engaged in 400 violations of the access regulations and the findings of fact and conclusions of law, that violations are likely to recur. And compare that with, for example, Shea Attica, in which this Court found the express refusal test to be met. The district court met the second prong of the test I just described by ruling on a summary judgment motion. Now, compare the – Was it 2007, I believe, something like that? Yes. Okay. So you think that is the analysis that meets that second prong of the express refusal? That and the findings and fact and conclusions of law. Because the findings of fact expressly found after making specific findings that violations are likely to recur. That is the standard set by this Court for entry of an injunction. Okay. But in this case, again, correct me if I'm wrong because this is a very long, complex deal, as you know. I thought what happened is that the Court made these findings, but then was extrapolating from that one store what was happening all over and then changed its mind. And you're saying that the fact that the Court changed its mind and refused later on, even though it had made the determination four years or more than that, well, four years earlier, that still meets the test? Yes. And if there's one thing I want to be crystal clear from this argument is there was no extrapolating being done from the exemplar restaurant. The key findings from the exemplar trial supporting the entry of a systemic injunction concerned the centralized policies of Taco Bell, policies that were found to be in place at all of the restaurants. So we weren't saying, okay, there's something going on at this one restaurant, so it must be going on otherwise. Counsel, with respect, how do you explain then the Court's language in the September 17th order, which is Bate Stamp 1? It says the Court will determine the form of injunctive relief, if any, to be issued following the conclusion of the other trials to be held in this case. Because that's exactly where we claim the district court went wrong. It is our contention on this appeal that all of the findings made in the findings of fact and conclusions of law, along with the partial summary judgment decision, more than established the showing we needed for entry of an injunction, and it established that showing under a statute, Title III, for which injunction is mandatory. But in this case, if I'm reading this correctly, the Court didn't say I'll never issue an injunction, just said we're going to consider this later. Maybe there will, maybe there won't. I don't read this as a denial. Am I missing something here? Two points. One is substantive, and one is interlocutory jurisdiction. You don't need to have, for interlocutory jurisdiction, a court saying that it will never enter an injunction. The district courts in Sciatica, the district courts in Forest Garden, and the district court in Monsanto all left open the possibility of doing some sort of injunctive relief in the future, and nevertheless, the express refusal test was met. Substantively, the problem with the delay is that it's going to take a situation in which we clearly have met the standard for entry of an injunction, and the delay could result in our injunctive relief being mooted, for example, and class members encountering barriers which the district court has found in an unchallenged finding are likely to recur during the interim. So that's why the district court abused its discretion in inserting this ten-year delay. We've already met our showing. Counsel, your time is down to about two and a half minutes. You may wish to reserve. I know you wanted to reserve five. Okay. Yes, I'd like to reserve my time. Our questions took up a lot of your time. Thank you. May it please the Court. Greg Hurley appearing for Appellee. Talk about court. Your Honors, this appeal seems fairly simple to us. We do see it as an attempt to appeal from a scheduling order, a case management order, what is clearly a midstream order by the district court judge. And we do see that, as the Court points out, as this pretty startling expansion of a doctrine. Can I just ask you right off the bat here? Opposing counsel suggests that there are really two types of appeal that could be had here. The one I want to focus on is the express refusal, which is the one they're going on. Does Taco Bell recognize that as a separate and distinct method of appeal where no need is ‑‑ there's no need to show irreparable consequences or anything like that? I don't see those as completely distinct, and I don't think they should be, from the purposes of what you need to do looking at jurisdiction. Has a final order been entered that would give you good rise to jurisdiction for interlocutory appeal? Right. Now, if you were to separate them, and actually, if you think about it, it helps Taco Bell's position, because the first test is express refusal. Nowhere in these orders is there an express refusal. They take the position, I gather, that the law, I guess 42 U.S.C. 12188A2 expressly requires the issuance of an injunction. I gather they are cobbling the findings of the partial summary judgment and that statute to say there is a requirement that this be done. The court, by postponing this, is denying. Is that your understanding, basically? No. My understanding of their argument is when they use the word mandatory appeal, it's sort of a play with words. Yes, the ADA does say, in the section you cited, that if they prove a violation, the court may order an injunction. It may or must. Well, I think if the court establishes that there is a violation of the ADA and the injunction will solve it, that's another point I'd like to get back to. In fact, just jump there right now. This Court in Oliver v. Ralphs addressed this issue, which is, is an injunction If everything is remedied, injunction is purely prospective. The ADA only grants injunctive relief. So if there is no injunctive relief that can be issued, then no injunction would issue. And that's sort of been lost in this whole shuffle here. That's what the judge is looking at right now. In fact, sitting on Judge Hamilton's desk right now is a motion that she requested as summary judgment motion. Part of that motion says, Your Honor, none of this is framed in the complaint, as your Oliver v. Ralphs opinion requires. Second part of it is, many of these issues, these policies and practices issues, aren't in the complaint either. If the court finds that the complaint doesn't encompass those, the court must follow your Oliver's opinion, Oliver opinion, and there is no injunctive relief. So that is functionally why we shouldn't be stepping in midstream to the trial court's process here, because that's ongoing. That analysis is ongoing. Kennedy. So from Taco Bell's perspective, not only is there not a definitive denial, but part of the reason for that is an injunction may not be able to achieve a remedy. We believe that injunction is not appropriate here because no prospective relief can be granted. That's the argument that I have to make before the district court. For the purposes of what we're here for today, I just wanted to point out why functionally this is premature at best to take jurisdiction over this appeal. Roberts. You heard me ask Mr. Fox if he had filed a motion for preliminary injunction, and, of course, he said he did not for the reasons expressed. What's the significance of that in this case? Well, it goes to the practical effect test, which he is relying on here. Is this significant enough that it would warrant a the court stepping in and taking an interlocutory appeal when there is no express refusal for injunctive relief? They didn't request a preliminary injunction at any point in the 10 years. They didn't even ask for a motion for reconsideration on Judge Hamilton's order here. If this is so urgent, why not seek a motion for reconsideration? And the harm that keeps coming up is the relating to the delay in the stay. Right now, the only thing that's delaying this case is this appeal. We would have started trial. We probably would have finished trial in the next phase of this case, but for this appeal. So I don't think that should be thrown under the Taco Bell. Anything further, counsel? Your Honor, no. Without reiterating my brief, I don't. I've answered any questions the Court has. Should we run for the border? Excuse me? Should we run for the border?  Thank you, Your Honor. Thank you, counsel. Mr. Fox, you have some reserve time. Thank you, Your Honors. A couple of points. First, there have been a number of decisions by this and other courts in which district courts have not made final determinations with respect to injunctive belief and have deferred those determinations in which interlocutory jurisdiction has been granted under the practical effect test. And we are seeking interlocutory jurisdiction under that test as well. Those cases include this Court's decision in AGA O'Whealy, A-G-C-A-O-I-L-I, and Oregon Natural Resources, as well as the Tenth Circuit's decision in Forest Guardians. All of those are deferral cases that district courts left open in both AGA O'Whealy and Oregon Natural Resources. Justice Ahear, the district courts made no definitive determinations on injunctive belief, but said, we're going to think about that down the road. And this Court accepted interlocutory jurisdictions because the consequences of waiting to review those decisions were serious or irreparable. And we've identified several such consequences here. But aren't – I know you've spoken about the possible mootness problem. That's conjectural and speculative, isn't it? I don't think so. They've – they started with 220. They've made a corporate decision to try to sell off their restaurants. They're down to 40 now. And they continue to do that. So that – I mean, we don't need to show a certainty of mootness. We have to show a risk of mootness. And we certainly have done that here. The – the point that Mr. Hurley made concerning a motion pending before the district court has only to do with the name plaintiff's damages claims. It has – whether or not they can recover for instances that were not specifically identified in the complaint has nothing to do with injunctive relief for the class. And for the class, the only remaining claims are injunctive claims. So we're at a point now where if we can resolve those, all of those claims are done. Oh, Oakland Cannabis is an important decision here because it establishes that when – it's a Supreme Court decision. And it establishes that when a statute only provides for injunctive relief, a district court has no discretion not to enter an injunction. And here, in Title III, the only relief provided is injunctive relief. We've demonstrated hundreds of violations of the statute. We've demonstrated that these violations are likely to recur. And thus, under Oakland Cannabis, the district court did not have the discretion not to enter an injunction. One point also, they – Taco Bell has had multiple attempts at trying to moot our claims over the last 10 years. They've made that argument three times. It's been rejected all three times. I see my time is out. Precisely on the – on the moment. Thank you very much, counsel. The case just argued will be submitted for decision. Before adjourning, the court would simply notify all of the people in the courtroom that I assume comprise associates at law firms and some students who are externs. We are going to retire to confer. And after the conference, we will come out to meet with all of you for a little while and take your questions. The court will now adjourn.
judges: Anello, O'scannlain, Smith